Everett A. ELLIS, Plaintiff–Appellant,

v.

Joe DIFFIE et al., Defendants–Appellees.

No. 98–5081.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted March 10, 1999.

Decided and Filed May 17, 1999.

Grant Smith (briefed), Nashville, TN, for Everett Ellis.

Timothy L. Warnock (argued), Bowen, Riley, Warnock & Jacobson, Nashville, TN, John C. Beiter, Robert L. Sullivan (briefed), Manatt, Phelps, & Phillips, Nashville, TN, for Joe Diffie.

David Lamar Maddox (briefed), David L. Maddox & Associates, Nashville, TN, for Rick Blaylock.

Jay S. Bowen (briefed), Bowen, Riley, Warnock & Jacobson, Nashville, TN, for Kerry Phillips.

Jay S. Bowen (briefed), Bowen, Riley, Warnock & Jacobson, Nashville, TN, David Lamar Maddox (briefed), David L. Maddox & Associates, Nashville, TN, for Howard Perdew.

David Lamar Maddox (briefed), David L. Maddox & Associates, Nashville, TN, for Johnny Slate, Stacy Slate, Sony Music, Epic Records, Johnny Slate Productions, Inc., Texas Wedge Music, Inc., Songwriters Ink, Inc., Affiliated Publishers, Inc., and Does 1–10.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

**OPINION**

KAREN NELSON MOORE, Circuit Judge.

The plaintiff, Everett A. Ellis, appeals from the decision of the district court, sitting as trier of fact, against him on his copyright infringement claim. Ellis claims that the song recorded by Joe Diffie entitled "Prop Me Up Beside the Jukebox (If I Die)" [hereinafter "Prop Me Up"] is copied in substantial part from Ellis's song entitled "Lay Me Out By the Jukebox When I Die" [hereinafter "Lay Me Out"]. The district court found that although the choruses of the songs were substantially similar to one another, Ellis did not show that the defendants had "access" to his song; moreover, the defendants presented evidence of independent creation of "Prop Me Up." Because the district court applied the law correctly, and its findings of fact are reversible only for clear error, we **AFFIRM** the district court's decision for the defendants.[1]

**I**

Everett "Allen" Ellis, a self-employed carpenter who taught himself to read music and play guitar, has been writing songs since he was a teenager. He claims that the song at issue, originally entitled "Aunt Belle," was written in 1985. The concept was derived from a story his mother told him about his aunt: the aunt wished to be laid out by the jukebox in the tavern that she owned (she resided in the back) when she died. He claims to have played the song for friends and relatives many times.

In late February 1991, Ellis and his cousin John Paul Thompson went to Nashville in the hopes of recording some of Ellis's songs. There they met defendant Johnny Slate, president of defendant Affiliated Publisher's, Inc. Slate apparently liked some of Ellis's songs and set him up in a make-shift studio to record. Ellis and Slate disagree as to the promises that were made by Slate at this time, but Ellis claims he was promised a staff writer position, money for living expenses, and "single song" contracts, although Slate denies making promises. Ellis recorded a number of his songs in March and April of that year, one of which was "Aunt Belle." Ellis claims that Slate made suggestions as to how Ellis could re-work "Aunt Belle," and that Ellis spent about a week making the changes. The end result, he claims, was "Lay Me Out By the Jukebox When I Die." Slate denies ever hearing the song

---

1. The defendants are Joe Diffie, the recording artist of the allegedly infringing song; Blaylock, Phillips, and Perdew, the writers; Sony Music and Epic Records (the unit of Sony that distributed the song); Johnny Slate Productions; and several other named corporations and unnamed individuals.

"Lay Me Out" before the advent of this lawsuit.

In late April, Ellis was out of money and returned to West Virginia to work. There was some testimony about a few communications between Ellis and Slate (or Slate's daughter) after that time, but they did not have extensive contact. In April 1993, Ellis heard the Diffie song "Prop Me Up Beside the Jukebox (If I Die)" and believed it to be his song. He eventually contacted an attorney about the alleged plagiarism.

The district court opinion summarizes the testimony of the various witnesses at trial. Ellis was confronted at trial with the fact that his initial deposition and complaint never referred to "Aunt Belle" at all, and mentioned only "Lay Me Out." Later, during discovery, the defendants produced a work tape found in Slate's possession that had a recording of "Aunt Belle." It is then, defendants claim, that Ellis's story about reworking "Aunt Belle" took shape. As to other witnesses, John Paul Thompson (the cousin who traveled with Ellis to Nashville) corroborated Ellis's version of events, as did a number of his friends and relatives who claimed to have heard both versions of the song. There were dueling expert witnesses who testified to the similarity or lack thereof between "Lay Me Out" and "Prop Me Up." Ellis did not claim that "Aunt Belle" was sufficiently similar to "Prop Me Up" to make out a copyright infringement claim.

Many of the defendants testified in detail as to the development of "Prop Me Up." Defendant Rick Blaylock was referred to Slate in late 1991 or early 1992, and Slate suggested that he work with some of the staff writers to rework a song entitled "Double Two–Steppin' Honkeytonk." The song had a line about being propped up against a jukebox once dead, and Blaylock claims the idea was inspired by a movie favorite of his, "Weekend at Bernie's." The movie's premise is that Bernie has died but his corpse is dressed up and brought to parties as if he were still alive.

Blaylock worked with staff writers Perdew and Phillips to develop the song, and he testified that not much remained to his original when they were done, other than the concept. All three writers testified about the progression of the song's development during four work sessions. They produced written notes and a work tape of some of the sessions, and discussed the reasons for having chosen certain lines or turns of phrase. All claimed that Slate had little or no contact with the writers during creation of the song. Slate admitted that his office door was usually unlocked and also that he could have played some of Ellis's songs for Perdew and Phillips at some time, but again, Slate claims he had no recording of "Lay Me Out."

The district court presided over the three-day trial, and issued his Order and Memorandum Opinion on December 8, 1997. The case was dismissed against all defendants, and it is from this dismissal that Ellis appeals.

## II

The standard of review, as both parties agree, is that stated in Federal Rule of Civil Procedure 52(a), which reads in part:

> **Effect.** In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.... Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

"Clear error" is defined most famously in *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948): "A finding is 'clearly errone-

ous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 395.

█ To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.,* 58 F.3d 1093, 1095 (6th Cir. 1995). Because Ellis's ownership of a copyright to "Lay Me Out" is not disputed, the sole question is whether it was copied. Direct evidence of copying is rare, so frequently the plaintiff will attempt to establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue. *See Robert R. Jones Assocs., Inc. v. Nino Homes,* 858 F.2d 274, 276–77 (6th Cir. 1988); *Wickham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984); *see also* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 13.02[B] (revised 1998).

The district court first analyzed whether the works were substantially similar, using the "ordinary observer" test, which is the traditional standard of copyright infringe-

ment. *See Black v. Gosdin,* 740 F.Supp. 1288, 1292 (M.D.Tenn.1990); *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,* 730 F.Supp. 1165, 1172 (D.Mass.1989).[2] He found that the choruses were substantially similar. They contain a similar idea, and share some phraseology, rhythms, chord progressions, and "melodic contours." He found other aspects of the songs, including the structures, lyrics, and melodies, to be distinct from one another. *See* J.A. at 40 (D. Ct. Op. at 20). Neither party contests the factual finding of substantial similarity on appeal.

█ The district court also found, however, that Ellis did not meet his burden of proving that the defendant songwriters had access to a recording of "Lay Me Out." Access is essentially "hearing or having a reasonable opportunity to hear the plaintiff['s] work and thus having the opportunity to copy." *Tree Publ'g Co. v. Warner Bros. Records,* 785 F.Supp. 1272, 1274 (M.D.Tenn.1991); *see also* 4 NIMMER § 13.02[A]. Although "evidence that a third party with whom both the plaintiff and defendant were concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant," "[a]ccess may not be inferred through mere speculation or conjecture." 4 NIMMER § 13.02[A] (citations omitted). In this case, the district court was not persuaded

2. The ordinary observer test requires the trier of fact to gauge the similarities of the two works solely on the basis of his "net impression" and without relying on expert analysis or dissection. 4 NIMMER § 13.03[E][2]. Also called the "audience" test, this approach has been criticized by at least one treatise-writer as formulaic, riddled with exceptions, increasingly less useful with the higher-technology works that are coming to dominate copyright law, and on questionable doctrinal footing. *Id.* § 13.03[E][1][b]. Nonetheless, it is and has been for decades the most common approach to copyright cases, and "until the Supreme Court validates or negates the audience test, the copyright bar will be left in suspense as to its ultimate validity." *Id.* § 13.03[E][1].

A few courts have modified the test, perhaps in an attempt to accommodate some of

its difficulties. Certain circuits require a plaintiff to meet both an "extrinsic" test, which allows for expert testimony dissecting the works and determining whether they contain similar ideas subject to copyright protection, and an "intrinsic" test, which is essentially the "ordinary observer" test, described above. The intrinsic test is usually undertaken without the benefit of experts. *See Towler v. Sayles,* 76 F.3d 579, 583–84 (4th Cir.1996); *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1062–63 (9th Cir.1981).

This circuit has not adopted a specific test for determining substantial similarity in copyright infringement cases, and this case is not an opportunity to do so. The parties do not dispute (and therefore do not brief) the trial court's approach to and finding of substantial similarity because the case turns on "access."

that Slate ever had a copy of Ellis's song "Lay Me Out." At trial, Ellis presented some evidence from which a trier of fact could draw the conclusion that the defendant songwriters had access to his work through Slate, but it required a somewhat speculative inferential chain, which the district court did not find convincing based on his evaluation of the evidence and witness testimony before him. Moreover, access to Ellis's work is not the same as access to the song "Lay Me Out." Paying due deference to the district court's factual determinations and credibility judgments, we conclude that the district court did not clearly err. The *Gypsum* standard requires a "definite and firm conviction that a mistake has been committed," and we have no such conviction here. *Gypsum*, 333 U.S. at 395.

Some case law indicates that the stronger the similarity between the two works in question, the less compelling the proof of access needs to be. *See generally* 4 NIM-MER § 13.02[B]; *see also, e.g., Repp v. Lloyd Webber*, 858 F.Supp. 1292, 1303 (S.D.N.Y.1994) ("where the copyrighted work and the infringing work are 'strikingly similar,' the test for proof of access is less rigorous"), *rev'd on other grounds*, 132 F.3d 882 (2d Cir.1997); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir.1984) ("absent proof of access, the similarities must be so striking as to preclude the possibility that the defendant independently arrived at the same result" (internal quotation omitted)). Although the district court did not explicitly analyze the case this way, its finding that the choruses alone have substantial similarities, coupled with its footnote about the other differences between the songs, can be read to reject implicitly an argument that the similarity is striking enough to minimize the need for Ellis to show access. The real problem with Ellis's proof, from the district court's perspective, was Ellis's inability to prove that "Lay Me Out" was actually recorded for Slate and left in his possession at all.

█ Finally, an inference of copying is rebuttable by evidence of independent cre-

ation of the allegedly infringing work. *See Repp*, 858 F.Supp. at 1303; *Intersong–USA v. CBS, Inc.*, 757 F.Supp. 274, 282 (S.D.N.Y.1991). The district court found that the detailed and specific evidence of independent creation of "Prop Me Up" by its songwriters overcame any implicit suggestion of plagiarism developed by Ellis's proof. Ellis did not impeach the evidence of independent creation at trial. There is no reason for this court to dispute the district court's conclusion that Ellis did not prove copyright infringement by a preponderance of the evidence, and as the trier of fact, the district court's views are entitled to deference. The findings were not clear error. Taking the evidence as a whole, there is no basis for a "definite and firm conviction that a mistake has been committed."

### III

For the foregoing reasons, we **AFFIRM** the decision of the district court to dismiss Ellis's claim of copyright infringement of his song "Lay Me Out By the Jukebox When I Die."