*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0256P (6th Cir.)
File Name: 04a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

FRANK P. FOGERTY and
NATHAN CROW,
  *Plaintiffs-Appellants,*

   *v.*

MGM GROUP HOLDINGS
CORP., INC., d/b/a MGM
UNIVERSAL MUSIC GROUP,
INC., UNIVERSAL STUDIOS,
INC., and EON PRODUCTIONS,
LTD.,
  *Defendants-Appellees.*

Nos. 03-5498/5874

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00158—William J. Haynes, Jr., District Judge.

Argued: June 9, 2004

Decided and Filed: August 3, 2004

———————————

Before: MARTIN and SUTTON, Circuit Judges;
HOLSCHUH, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** W. Gary Blackburn, BLACKBURN & McCUNE, Nashville, Tennessee, Adam Siegler, THE SIEGLER LAW GROUP, Beverly Hills, California, for Appellants. Timothy L. Warnock, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellees. **ON BRIEF:** W. Gary Blackburn, BLACKBURN & McCUNE, Nashville, Tennessee, Adam Siegler, THE SIEGLER LAW GROUP, Beverly Hills, California, for Appellants. Timothy L. Warnock, Jay S. Bowen, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge. Plaintiffs Frank P. Fogerty and Nathan Crow appeal the district court's order granting summary judgment and awarding attorneys' fees to defendants (collectively, "MGM") in this copyright infringement case. As we agree with the district court that plaintiffs have not presented a sustainable theory of relief, we affirm that ruling. As we disagree with the district court's award of attorneys' fees, we reverse that ruling.

———————————

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

## I.

Michael Wilson and Barbara Broccoli, the current producers of the James Bond films and principals of Eon Productions, Ltd., sought a composer to write the musical score for the nineteenth Bond film—"The World Is Not Enough." In September 1998, Wilson and Broccoli selected David Arnold, a London-based composer, a Grammy award winner for the musical score for "Independence Day," and the author of the end theme song for the Bond film "Tomorrow Never Dies." Arnold maintains a private recording studio in London, where he composed the theme song and gave it the same name as the film. In writing the song, Arnold collaborated with lyricist Don Black, who also lives in London and who has written the lyrics to the theme songs for four previous Bond films. Arnold and Black met several times in November and December of 1998 to discuss the lyrics for "The World Is Not Enough," and they exchanged phone calls, faxes and e-mails during that time in collaborating on the song.

Arnold also contacted Shirley Manson, the Scottish-born lead singer for the rock-group "Garbage," and asked her to record the song. She agreed.

Between late October and November of 1998, Arnold played the melody of "The World Is Not Enough" over the phone to his personal assistant Trish Hillis, before whom he often informally auditioned his songs. According to Arnold, he "strung some la-la's together, and all of a sudden the [song] came to life, and [he] thought [that was] probably it." JA 229. On December 26, 1998, Arnold again played "The World Is Not Enough" for Hillis, this time on a piano at his London home. When Arnold played the music for Hillis, he had completed the song and lyrics, save for the bridge—a brief transition of approximately eight bars in the middle of the song. In December 1998, Arnold also played the melody

for Geoff Foster and Isabel Griffiths, employees of Air Studios, on a grand piano in the studio's main hall.

In early January 1999, Arnold completed the song and created a "demo" recording of it on his computer at his private recording studio. Arnold's computer shows January 6, 1999 as the last day he modified the demo recording.

At roughly this time, Arnold played "The World Is Not Enough" for Michael Wilson and Barbara Broccoli, the producers of the upcoming film. They liked the song. On January 8, 1999, Arnold traveled to Pinewood Studios in England and played the song for Michael Apted, the director of "The World Is Not Enough," who "was extremely pleased with [the song]." JA 233.

Arnold next asked Trish Hillis to deliver a copy of the demo to Shirley Manson, who (as noted) had agreed to record the song. On January 19, Hillis's phone log shows that she contacted Ian Wesley, the general manager of Mushroom Records, Garbage's record label. Wesley told Hillis that Manson was staying at the Royal Garden Hotel in London and to deliver the recording to the hotel at 10 a.m. the next day. On January 20, after Hillis arrived at the Royal Garden Hotel, she called Harold Kohl, Garbage's tour manager, who told her to leave the recording at the front desk. A bill from the Royal Garden Hotel indicates that Shirley Manson stayed there on January 20, 1999, and Manson later recalled receiving the song from Kohl in January 1999 while staying at the hotel.

Arnold next sent a recording of the song to his American agent, Vas Vangelos, who lives in Los Angeles. An invoice shows that Air Studios billed Eon Productions for a shipment to Vangelos on February 2, 1999. Michael Sandoval, then an executive vice president at MGM, requested a copy of "The World Is Not Enough" from Vangelos. Sandoval received

"The World Is Not Enough" on February 4, 1999, and he played the song for other MGM executives. No one apparently liked the song initially because it was a ballad and because they had hoped for a theme song with a different tempo.

On the same day (February 4, 1999), Nathan Crow visited Michael Sandoval at MGM and delivered a recording of his song "This Game We Play," which he had co-written with Frank P. Fogerty. According to Crow, Sandoval liked the song, suggested that he might consider it for the 1999 film "The Thomas Crown Affair" and kept a copy of the recording. Arnold's "The World Is Not Enough," it turns out, shares an identical four-note sequence with Crow's "This Game We Play."

Before Manson recorded the commercial version of "The World Is Not Enough," MGM contacted Arnold in March of 1999 and suggested that a "three-note motif" in "The World Is Not Enough" was too similar to a motif in earlier Bond theme songs. Arnold agreed to remove the three-note sequence, which all agree is unrelated to the four-note sequence that "This Game We Play" and "The World Is Not Enough" have in common.

In June and August of 1999, Shirley Manson and her band recorded "The World Is Not Enough." Manson requested one lyrical change in the song because the line—"I know when to kiss and I know when to kill"—did not meet her tastes. JA 228. Arnold and Black changed the lyrics, and she completed the recording.

## II.

Convinced that Arnold and MGM had copied the four-note sequence from "This Game We Play" in composing "The World Is Not Enough," Fogerty and Crow filed a copyright infringement action in the United States District Court for the

Middle District of Tennessee. The parties conducted discovery, and MGM moved for summary judgment, claiming that the undisputed facts showed that Arnold independently created "The World Is Not Enough."

The district court granted MGM's motion, concluding that Arnold had independently written the tune to the song:

Defendants and composers of ["The World Is Not Enough"] did not have access to ["This Game We Play"] [through] any of the avenues postulated by Plaintiffs because a review of the record indicates that the melody and significant portions of ["The World Is Not Enough"] . . . were completed prior to the dates that any alleged access by Defendants to ["This Game We Play"] could have occurred.

D. Ct. Op. at 17 (Mar. 14, 2003). The district court also rejected plaintiffs' alternative claim that the two songs are "strikingly similar," an independent theory of liability that warrants relief even when the plaintiff cannot prove access. *Id.* at 19–20. "There is no evidence adduced by Plaintiffs," the court concluded, "to support the proposition that the two works are so strikingly similar that copying is the *only* plausible explanation of the similarities." *Id.* at 20.

In the aftermath of this ruling, MGM moved for attorneys' fees under § 505 of the Copyright Act, 17 U.S.C. § 505, and for nontaxable costs under Federal Rule of Civil Procedure 54(d). Alleging that plaintiffs' claims were "objectively unreasonable," MGM sought $170,519 in attorneys' fees and $11,647.60 in non-taxable costs. The district court granted MGM's motion for attorneys' fees "in the interests of justice and in furtherance of the objectives of the Copyright Act." D. Ct. Op. at 8 (June 17, 2003). "Plaintiffs['] claims were objectively unreasonable," the district court observed, "in that Plaintiffs pursued litigation despite multiple third-party declarations establishing independent creation of ["The World

Is Not Enough"] before any of the Defendants had access to Plaintiffs' original work," and "Plaintiffs offered no direct evidence to support one of the two basic elements of copyright infringement." *Id.* at 8–9. The district court, however, "conclude[d] that a 30% reduction in the billed hours . . . is appropriate . . . in light of the overstaffing of this litigation, the redundant billing, and vague entries on the firm's invoices," *id.* at 15, and awarded MGM $85,507.16 in attorneys' fees, *id.* at 19. Holding that fees for "(1) legal research; (2) federal express charges; (3) messenger service; (4) phone/telecopy; (5) postage; (6) out of town travel; and (7) copies" were not allowable, the district court denied MGM's request for nontaxable costs of $11,647.60. *Id.* at 20. For routine taxable costs, the district court awarded $4,847.58. *Id.* at 23.

### III.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Supreme Court has held, "there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted). A district court's summary-judgment decision receives de novo review. *See Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004).

The Copyright Act gives copyright owners exclusive rights to reproduce, prepare derivative works from, distribute, and publicly perform or display a copyrighted work. *See* 17 U.S.C. § 106. To the ends of protecting these rights, the Act allows "[t]he legal or beneficial owner of an exclusive right under a copyright . . . to institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). A

claim of copyright infringement requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).

Because claimants rarely have direct evidence of copying, they typically try to establish an inference of copying by showing "(1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Ellis*, 177 F.3d at 506. "Access," we have held, "is essentially hearing or having a reasonable opportunity to hear the plaintiff[s'] work and thus having the opportunity to copy" and "may not be inferred through mere speculation or conjecture." *Id.* (quotations omitted). The "substantial similarity" analysis first requires a filtering of the unprotectable aspects of the protected work, then asks whether an "ordinary observer" would perceive the original and the alleged copy as substantially similar. *See Kohus v. Mariol*, 328 F.3d 848, 855–57 (6th Cir. 2003). Once a plaintiff establishes access and substantial similarity, the defendant may rebut the presumption of copying by showing independent creation of the allegedly infringing work. *Ellis*, 177 F.3d at 507; *see also Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001). Lastly, even without proof of access, a plaintiff still may prevail by showing a "striking similarity [between the works], precluding all possible conclusion but that the work was copied." *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 325 (6th Cir. 2004).

In applying these principles to this case, the parties share considerable common ground. MGM does not dispute that Fogerty and Crow own a valid copyright in "This Game We Play," and plaintiffs concede that they failed to produce direct evidence of copying. For purposes of this appeal, the parties also agree that Fogerty and Crow proved that MGM had

access to their work after February 4, 1999, and that the two songs are substantially, but not strikingly, similar.

The question under these circumstances is whether David Arnold independently created "The World Is Not Enough" before February 4, 1999, and whether the undisputed evidence establishes that fact. We believe it does.

Fogerty and Crow concede that David Arnold did not have access to "This Game We Play" until Crow delivered a recording of the song to Michael Sandoval at MGM on February 4, 1999. Before that date, deposition testimony and personal calendar entries show that David Arnold and Don Black collaborated on "The World Is Not Enough" in November and December 1998. Arnold performed the song twice for his personal assistant Trish Hillis between October and December of 1998. He also performed the song for Geoff Foster and Isabel Griffiths of Air Studios in December 1998, and the film producers Barbara Broccoli and Michael Wilson heard the song in early January 1999. Arnold also made a demo recording of the song, and his personal computer at Air Studios indicates that he last modified the recording on January 6, 1999. The next day, Arnold delivered a copy of the song to Pinewood Studios where the film's director, Michael Apted, listened to the song.

Arnold and Hillis also testified that Hillis delivered a copy of the recording to the Royal Garden Hotel in London where Shirley Manson was staying. Hillis produced her phone log showing that she made several calls concerning the delivery on January 19, 1999, and her personal calendar indicated that she planned to go there on January 20 to deliver Arnold's song. MGM also produced a hotel receipt indicating that Shirley Manson stayed at the Royal Garden Hotel on January 20. Hillis testified in her deposition that she left the recording at the hotel desk for Harold Kohl, Garbage's tour manager, and Manson recalled receiving the recording from Kohl at the hotel.

Aside from a lyrical change to the song (the removal of one line to accommodate Shirley Manson) and one change to the score (the removal of the "three-note motif" to accommodate the MGM executives), the witnesses that testified or gave declarations agree that the song they heard before February 4, 1999 did not otherwise change after that date. In the face of this evidence that Arnold and Black independently created "The World Is Not Enough" before MGM first had access to "This Game We Play" on February 4, 1999, plaintiffs raise a series of arguments designed to show that they nonetheless should be able to present their claim to a jury. Each is unconvincing.

First, they suggest that they can respond to this evidence simply by claiming that a jury might choose to disregard it or might find it unpersuasive. That is not true. *See Cox v. Ky. Dep't of Transp.* 53 F.3d 146, 150 (6th Cir. 1995) ("[A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment."); *Curl v. Int'l Bus. Machs. Corp.*, 517 F.2d 212, 214 (5th Cir. 1975) ("[T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.") (quotation omitted); *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1024 (E.D. Va. 1997) ("[A] copyright plaintiff cannot base her opposition to summary judgment entirely on the hope that a fact finder will disbelieve the persons who have submitted affidavits on issues of access."); *cf. Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted).

Second, in the absence of affirmative evidence rebutting MGM's pre-access chain of events, plaintiffs claim that inconsistencies in MGM's evidence by themselves create a genuine issue of material fact. They note, for example, that MGM executives disliked "The World Is Not Enough" but liked "This Game We Play" in early February 1999. The different reactions, plaintiffs urge, show that the two songs were not substantially similar on February 4, 1999, and show that Arnold must have copied "This Game We Play" after February 4, 1999 because the songs are substantially similar today. Too many competing inferences, however, separate this premise from plaintiffs' proposed conclusion. Fogerty and Crow neglect to mention that MGM executives listened to each song for different reasons—in Arnold's case to determine if the song would work for the new Bond film, in plaintiffs' case to see if their song would work for *another* film. Because the MGM executives listened to each song in different musical, artistic and commercial contexts—with one solicited for the Bond movie and the other unsolicited and at most considered for another film—this theory of infringement is too speculative to warrant a jury trial on its own.

Fogerty and Crow next scrutinize Arnold's and Black's testimony. Arnold's declaration indicates that he made "an initial demonstration recording" of the "The World Is Not Enough" on January 6, 1999. Black's declaration, however, indicates that he made a recording with Arnold in November or December 1998. Neither version of events, however, places creation of the demo recording after February 4, 1999. A factfinder could believe Arnold; it could believe Black; or it could believe parts of each individual's testimony. But it could not rationally come to the conclusion that the recording was made after February 4, 1999, especially in light of plaintiffs' inability to refute the delivery of a recording of the song to Manson at the Royal Garden Hotel on January 20, 1999.

Fogerty and Crow point to one other alleged discrepancy between Arnold's and Black's testimony that deserves mention. Posturing as someone working with James Horner, the composer of the "Titanic" sound track, Crow contacted Don Black by phone and asked whether Black would be interested in writing the song lyrics for the film "Oceans 11." During the tape-recorded conversation, Crow asked Black questions about "The World Is Not Enough," including when he received the song to write the lyrics. Black, who later explained that he was trying to impress someone whom he believed to be a major composer, indicated that he received the song approximately two months before the movie's release date, which was December 1999. As Crow admitted (after the phone call), "the entire thing [was] deceptive . . . [and] intentional[]," JA 310, because he was trying "to trick them into telling [him] the truth," JA 311.

The Federal Rules of Civil Procedure do not provide for this form of discovery. And it is not clear whether the Federal Rules of Evidence would permit the admission of such a phone call. But even assuming the admissibility of this evidence and even assuming that Fogerty and Crow would unveil this antic to a jury, the statement at issue—that Black (the lyricist) purportedly received the music to the song just two months before its release—does not establish a cognizable cause of action. In order to credit this statement, a jury would have to believe that Black wrote the lyrics to "The World Is Not Enough" in October 1999—two months *after* Garbage finished commercially recording the song. No rational trier of fact could rely on this statement in finding for Fogerty and Crow.

Plaintiffs next point to several letters written by Trish Hillis to individuals seeking to collaborate with David Arnold while he composed the musical score for "The World Is Not Enough." The nub of these letters is that Arnold continued working on the musical score for the entire movie after the February 4, 1999 date of access. Absent from the letters,

however, is any reference to the theme song, which is all that is at issue here. The most potent letter, dated April 16, 1999, reads: "[Arnold] has also been commissioned to write both [the theme and end] songs, which were finished a few weeks ago." JA 594. At most, however, this statement shows that *both* songs (as opposed to only "The World Is Not Enough") were not complete until after February 4, 1999, which does not create a fact dispute that the theme song had not been completed before that date.

Shirley Manson's testimony also contains several inconsistencies, none of which casts doubt on MGM's claim of independent creation. Manson and Arnold failed to recall consistently the details of when Manson first heard the song and when she and Arnold first communicated after she heard the song. In his declaration, Arnold claimed that he spoke with Manson on the phone January 20, 1999 (the day Hillis delivered the song to the Royal Garden Hotel) and that she loved the song. In Arnold's deposition, he said that he received an e-mail from Manson on an unknown date. Manson essentially could not recall when she first listened to the demo recording and had "no idea" if she listened to it prior to February 4, 1999. JA 215. But these inconsistencies do not alter the unrefuted evidence that Hillis left a copy of the song for Manson at the Royal Garden Hotel on January 20, 1999, and that it was this copy of the song that Manson eventually heard. In this setting, the district court's decision to disregard the inconsistencies in Manson's other testimony does not amount to an improper weighing of the evidence. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir.1989) ("The trial court has at least some discretion [at summary judgment] to determine whether [plaintiffs'] claim is 'implausible.'").

Crow also made a false-pretenses phone call to Shirley Manson, much like the one he made to Don Black. During the call, Manson indicated that she first received the song in August of 1999. While Manson's band did not *finish*

commercially recording the song until that date, the parties do not dispute that the first recording session of the song occurred in June 1999. In other words, to believe plaintiffs' interpretation of Manson's statement, a jury would have to conclude that Manson first heard "The World Is Not Enough" two months *after* she began recording the song. No rational jury would accept that sequence of events.

Fogerty and Crow next take aim at the declarations of Wilson and Broccoli. In their declarations, Wilson and Broccoli noted that "[a]side from some minor lyrical changes, the song David played us in his attic room that day was the same song we ultimately recorded for the film," but failed to mention that Arnold later removed the "three-note motif" that the initial recording of the music shared with earlier Bond songs. This oversight, according to plaintiffs, makes the declarations unreliable. We are not persuaded. The change was a minor one; it had nothing to do with the four-note sequence that parallels "This Game We Play"; and it does not alter the fact that Arnold played "The World Is Not Enough" for others (including Wilson and Broccoli in early January 1999) well before the date of access.

The dates of the contracts between Arnold, Black and MGM also have little value. True, each written contract went into effect after February 4, 1999. But the undisputed evidence shows that Wilson and Broccoli selected David Arnold to write the musical score for "The World Is Not Enough" in September 1998. And in his own deposition, Crow acknowledges that on February 4, 1999, when he met with Sandoval of MGM, Sandoval told him that Arnold had a "lock on this," JA 299, "that Mr. Arnold had been hired to write an original score for the film," JA 298, and that "Mr. Sandoval made it very clear that Mr. Arnold had been hired to write the score," *id.*

Plaintiffs also point to the fact that Arnold never produced the demo recording that he made on January 6, 1999. Arnold

testified that his computer at Air Studios showed that he last modified the recording on January 6, 1999, but offered no explanation as to why he could not produce a recording. According to Fogerty and Crow, "a party having control of information bearing upon a disputed issue may be given the burden of bringing it forward and suffering an adverse inference from [the] failure to do so." Appellant Br. at 21. Here, however, MGM is the party, not David Arnold, and it did produce an original copy of the demo recording from Don Black. Plaintiffs do not refute the authenticity of Black's copy of the song, and at all events never explain why they did not seek discovery of Arnold's computer to determine if the January 6th demo could still be retrieved.

Fogerty and Crow, lastly, question the reliability of MGM's declarations based on the "excessive hours spent" in drafting them. Appellant Br. at 22. MGM's attorneys "spent approximately 80 hours drafting and revising these declarations," plaintiffs argue, and "[i]t does not take 80 hours to write a few pages of the truth." *Id.* at 22–23. But this argument does not prove that the affidavits are false or even suggest as much. Whether the scrivener of the affidavits was quite deliberate, was inefficient or merely was confronted with a voluminous record, extensive time in drafting affidavits (or even excessive time in drafting them) does not indicate that they are false.

## IV.

Plaintiffs next argue that even if it was appropriate to grant summary judgment, the district court erred in awarding fees to MGM. We agree.

Section 505 of the Copyright Act provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Under this provision, a district court may "impose attorney[s'] fees in frivolous and objectively unreasonable lawsuits." *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 639 (6th Cir. 2001). A district court's decision to award attorneys' fees should be based on such factors as "[the] frivolousness of the claim," the "motivation" of the claimant, the "reasonableness" of the claim and the goal of "deterr[ing]" frivolous claims. *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002). We review a district court's decision to grant or deny fees for an abuse of discretion. *ABC Communications*, *Inc.*, 264 F.3d at 639.

While plaintiffs' claim ultimately proved meritless, that does not make it "objectively unreasonable" as a matter of law or fact. *See id.* at 639–40 (reversing an award of attorneys' fees under 17 U.S.C. § 505 because "at the time [the] litigation was before the district court, the law on certain relevant aspects of [the] lawsuit was unsettled"); *cf. Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 58 (1st Cir. 1999) ("The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions."). At the time Fogerty and Crow filed their complaint, they knew only

that Crow delivered "This Game We Play" to Michael Sandoval and, ten months later, MGM used a very similar song as the theme song for "The World Is Not Enough." Nowhere does MGM contend that filing a complaint on this basis was objectively unreasonable. *See Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001) ("[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.").

As discovery progressed, other facts surfaced that legitimately prompted plaintiffs to pursue their claim. They obtained an expert opinion that the two songs were substantially similar; they learned—quite remarkably—that Crow delivered his song to an MGM executive (Sandoval) on the same day that Arnold delivered his song to Sandoval; they learned that Arnold could not produce a demo of the January 6, 1999 version of the song; and they learned of inconsistencies in Manson's and Arnold's recollections of when Manson first heard "The World Is Not Enough" and communicated her comments to Arnold. All told, this evidence gave plaintiffs objectively legitimate reasons for pursuing discovery in the case and for seeing the case through to summary judgment.

The two reasons given by the district court for awarding fees do not alter this conclusion. The court first noted that "Plaintiffs['] claims were objectively unreasonable in that Plaintiffs pursued litigation despite multiple third-party declarations establishing independent creation of ["The World Is Not Enough"] before any of the Defendants had access to Plaintiffs' original work." D. Ct. Op. at 8 (June 17, 2003). But the declarations contained several inconsistencies and all of them were submitted by individuals with a personal and professional stake in the answer to whether David Arnold copied a song that he represented as original. While those inconsistencies proved immaterial, plaintiffs were entitled to

depose the individuals and determine whether their recollections of the facts collectively made sense.

The second factor offered by the district court is no more persuasive: "Plaintiffs offered no direct evidence to support one of the two basic elements of copyright infringement." *Id.* at 8–9. This ambiguous reference points to one of two things. Either plaintiffs failed to produce direct evidence of copying or plaintiffs failed to provide evidence of access (they did provide an expert's opinion that the songs were substantially similar). As to the former explanation, direct evidence of *copying* is a rarity and accordingly the failure to provide such evidence by itself never supplies an independent basis for awarding attorneys' fees. *See Ellis*, 177 F.3d at 506 ("Direct evidence of copying is rare, so frequently the plaintiff will attempt to establish an inference of copying [with indirect evidence]."); *see also Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 61 (1st Cir. 2000); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992); *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

As to the latter explanation, it was not until *after* the completion of discovery that the district court could have reached the conclusion that plaintiffs failed to provide evidence of access. *See Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987) ("[I]f discovery could uncover one or more substantial fact issues, appellant was entitled to reasonable discovery to do so."). Prior to that, as noted, plaintiffs had several concerns that reasonably prompted them to continue discovery. Indeed, the most important depositions in the case—those of Arnold, Black, Manson and Hillis—took place approximately one month before MGM filed its successful motion for summary judgment. Fogerty and Crow reasonably believed that these depositions might bear fruit, a conclusion that the district court apparently reached as well when it denied MGM's first motion for summary judgment and request for a stay of

discovery, both of which were filed before plaintiffs took these depositions.  D. Ct. Order (Jan. 20, 2002).

### V.

For these reasons, we affirm the district court's grant of summary judgment and reverse its award of attorneys' fees.