RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LEONARD JONES and JAMES E. WHITE,
      *Plaintiffs-Appellants (07-1051),*
      *Plaintiffs-Appellees (07-1566),*

    *v.*

MARY J. BLIGE; ASIAH LEWIS; LUCHANA N.
LODGE; UNIVERSAL-MCA MUSIC
PUBLISHING, INC., a Division of Universal
Studios; UNIVERSAL MUSIC GROUP, INC., in
its own right, Successor in Interest, MCA
Records, Incorporated.; ANDRE ROMELL
YOUNG; BRUCE MILLER; CAMARA KAMBON;
MELVIN BRADFORD; MICHAEL ELIZONDO;
and JOHN DOE, 1-10; jointly and severally,
      *Defendants-Appellees (07-1051),*
MARY J. BLIGE; ASIAH LEWIS; LUCHANA N.
LODGE; UNIVERSAL-MCA MUSIC
PUBLISHING, INC., a Division of Universal
Studios; UNIVERSAL MUSIC GROUP, INC., in
its own right, Successor in Interest,
      *Defendants-Appellants (07-1566).*

Nos. 07-1051/1566

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 04-60184—Marianne O. Battani, District Judge.

Argued: January 16, 2009

Decided and Filed: March 9, 2009

Before: KENNEDY, COLE, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Benjamin Whitfield, Jr., BENJAMIN WHITFIELD, JR. & ASSOCIATES, PC, Detroit, Michigan, for Appellants. Michael D. Socha, DICKINSON WRIGHT, Detroit, Michigan, for Appellees. **ON BRIEF:** Benjamin Whitfield, Jr., BENJAMIN WHITFIELD, JR. & ASSOCIATES, PC, Detroit, Michigan, for Appellants. Michael D. Socha,

DICKINSON WRIGHT, Detroit, Michigan, Daniel D. Quick, DICKINSON WRIGHT, Bloomfield Hills, Michigan, for Appellees.

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Plaintiffs-Appellants Leonard Jones and James E. White (collectively, "Plaintiffs") sued Mary J. Blige, a singer, Asiah Lewis and Luchana M. Lodge, lyricists, and Universal-MCA Music Publishing, Inc. and Universal Music Group, Inc. ("Universal") (collectively, "Defendants") for copyright infringement.  Plaintiffs claim that a song by Blige, "Family Affair," infringed a song created by Plaintiffs, "Party Ain't Crunk," that Plaintiffs submitted to Universal on a demo compact disc ("CD") prior to the release of Blige's song.  The district court granted summary judgment to all Defendants.  Plaintiffs appeal that ruling, and Defendants Blige and Universal appeal the district court's denial of their motion for attorneys' fees.  For the reasons set forth below, we **AFFIRM** the district court's decisions.

## I.  BACKGROUND

### A.     Plaintiffs' creation of "Party Ain't Crunk"

The song alleged to have been infringed in this suit, "Party Ain't Crunk," was recorded by an aspiring rap artist named Tim Acker, also known as "Benevolence."  Acker is not a party to the suit.  In 2000, White met Acker and became his manager.  White eventually registered "Party Ain't Crunk" with the United States Copyright Office and is listed as an author of the song.  Jones, an occasional collaborator of White's, shares an interest in any revenues from "Party Ain't Crunk" under a contractual agreement with White. Jones introduced White to Dannie Longmire, the producer who created the music for "Party Ain't Crunk."

"Party Ain't Crunk" was written and recorded as follows:  Sometime before Christmas of 2000, White contacted Longmire and asked him to create musical tracks for Acker to use in making a demo CD.  Longmire created a number of "beat tracks"—beats without melodies—and sent them to White around Christmas of 2000.  Acker selected a

number of beat tracks he liked, and Longmire began creating melodies to add to them. In March of 2001, Longmire created a melody, added it to one of the beat tracks, and named the resulting song (for record-keeping purposes) "Jack 216"—this was essentially the non-lyrical portion of "Party Ain't Crunk."

In March or April of 2001, White and Acker met at Longmire's home, which contained a recording studio. Over the course of five days, Acker recorded lyrics over the musical tracks Longmire had created, including the lyrics to "Party Ain't Crunk," which White and Acker co-wrote. Following the week of recording, Longmire completed the technical polishing of the songs on the demo CD. On May 7, 2001, White registered the CD and its contents, including "Party Ain't Crunk," with the Copyright Office under the title "Benevolent Vol. 1."

**B.      White submits the demo to Universal**

White attempted to generate interest in the demo CD at various record companies. He had a business relationship with Adbul Fakir, a former member of the singing group "The Four Tops," and White consulted with Fakir about potential contacts within the music industry. Andy McKaie, Senior Vice President of Artists and Repertoire for Universal Music Enterprises, a division of Universal Music Group Recordings, Inc., was one of the record executives Fakir knew, and Fakir permitted White to use his name as a reference with McKaie. McKaie's division at Universal does not publish new music; it re-issues prior-released songs in compilations, such as "greatest hits" albums.

White pitched the Benevolent demo to McKaie by telephone in May of 2001, referencing Fakir. According to White, McKaie told him to "send the product in." (Joint Appendix ("JA") 135.)[1] Shortly thereafter, White hand-delivered a sealed package containing a demo CD, a cover letter, photographs of Acker, and White's business card to the building in which McKaie's office was located. After a few days, White called McKaie's office and spoke to his secretary, JoAnn Frederick. According to White, Frederick said that McKaie was out of town, but the demo CD was "still on his desk,

---

[1]Citations to the Joint Appendix refer to case number 07-1051, Plaintiffs' appeal of the grant of summary judgment.

[and] he is going to take a listen to it." (JA 136.) White followed up with another call shortly thereafter and again spoke to Frederick, who allegedly told him that "their department had decided to pass on [the CD]." (JA 136.) At White's request, Frederick returned the materials White had submitted, although she did not include the original envelope and cover letter, making it clear that White's package had been opened. A handwritten note in the return package read: "Jim [White]: MCA is not accepting any unsolicited material at this time, Sorry. JoAnn." (JA 19.)

White also was unable to generate interest in the CD at other record companies. When he heard Mary J. Blige's song "Family Affair" on the radio in August of 2001, White believed that it infringed "Party Ain't Crunk," which he had submitted to Universal, the publisher of Blige's records.

**C.    Defendants' creation of "Family Affair"**

"Family Affair" is the second song on Blige's album entitled *No More Drama*, which was released for commercial sale by Universal on August 28, 2001 and registered with the Copyright Office on September 17, 2001. Blige is a nationally known artist, and *No More Drama* was a commercial success, selling more than two million copies. The musical (non-lyrical) portion of "Family Affair" was created by Andre Young, a producer and performer of rap and hip-hop music publicly known as "Dr. Dre." Young was originally named as a defendant in this case, but the district court dismissed the claims against him for lack of personal jurisdiction, a ruling that Plaintiffs do not appeal.

As a producer, Young typically creates musical tracks in a studio with several other musicians and then provides those tracks to other artists who record vocals over them. Young created an initial version of the musical portion of "Family Affair" on September 13, 2000, as evidenced by a studio log and a recording bearing that date. Young testified that he created this initial version in a studio with a bass player and a keyboard player. The studio engineers working with Young entitled this version of the song "Fragile" for record-keeping purposes. Several months later, on January 10, 2001, "Fragile" was transferred from digital to analog format and, by that point, had been re-named "Family Affair." Young testified that either Blige or her brother, songwriter

Bruce Miller, supplied the new name.  The January 10, 2001 version of the non-lyrical portion of "Family Affair" was in near-final form.

Young and Blige had previously agreed to collaborate on a song, and near the end of 2000, Young sent her the music-only version of "Family Affair."  Blige recorded vocals over the music.  At Young's suggestion, Blige later added a bridge—a transitional passage that connects two parts of a song.  Blige testified that she wrote the lyrics for the bridge, while her brother and a team of writers (which would have included defendants Lewis and Lodge) wrote the rest of the lyrics to "Family Affair."  She stated that she created her contribution of the lyrics to "Family Affair" in late May or early June of 2001.

**D.        The district court's decision**

After discovery, Defendants moved for summary judgment.  The district court granted summary judgment for Defendants Lewis and Lodge on two bases:  First, because Plaintiffs failed to respond to a request for admissions that the lyrics of the two songs were not substantially similar and that Lewis and Lodge had no access to the lyrics of "Party Ain't Crunk," the district court deemed Plaintiffs to have conceded these points; second, the court found that, even reaching the merits, no reasonable juror could find the lyrics of the two songs to be substantially similar.  The district court also granted summary judgment to the remaining Defendants, finding that Plaintiffs could not show that those Defendants had access to Plaintiffs' song and that, in any case, Defendants had shown that they created "Family Affair" independently.  During the course of the litigation, the district court excluded both sides' proposed expert witnesses—Plaintiffs' because Plaintiffs failed to make her available for deposition on the court-ordered date and Defendants' for reasons not apparent from the record.  After prevailing on their motion for summary judgment, Defendants sought attorneys' fees, which the district court denied, finding that Defendants could not establish the factors that would support a discretionary award of fees.

## II.  ANALYSIS

### A.      Standard of review; legal standard for copyright infringement

We review a grant of summary judgment de novo.  *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006).  The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  We view factual evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  Summary judgment is not appropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 251-52.

In copyright infringement cases, "summary judgment, particularly in favor of a defendant, is a practice to be used sparingly" because substantial similarity is often an extremely close question of fact, but "a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity."  *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (quoting *Wickham v. Knoxville Int'l Energy Expo., Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984)).

"To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it."  *Kohus*, 328 F.3d at 853; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (stating that a copyright infringement claim requires proof of valid copyright and proof of copying of original elements of allegedly infringed work).  Where there is no direct evidence of copying, a plaintiff may "establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue."  *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999); *see also Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 352 (6th

Cir. 2004). A lesser showing of access (or even no showing at all) will suffice where the works are "striking[ly]" similar, strongly suggesting that copying occurred. *See Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004).

**B.      Plaintiffs failed to raise a triable issue of fact as to "access"**

"Access is essentially hearing or having a reasonable opportunity to hear the plaintiff['s] work and thus having the opportunity to copy." *Ellis*, 177 F.3d at 506 (quotation marks and citation omitted). "'Access is proven when the plaintiff shows that the defendant had an opportunity to [listen to] or copy plaintiff's work.'" *Murray Hill Publ'ns*, 361 F.3d at 316 (quoting *Glanzmann v. King*, 8 U.S.P.Q.2d (BNA) 1594, 1595 (E.D. Mich. 1988)). "'Although evidence that a third party with whom both the plaintiff and defendant were concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant, access may not be inferred through mere speculation or conjecture.'" *Id*. (quoting *Ellis*, 177 F.3d at 506 (additional internal quotation marks omitted)). "'A mere assertion of access, unsupported by probative evidence is inadequate.'" *Id*. (quoting *Glanzmann*, 1988 U.S. Dist. LEXIS 15705, at *3). "'Nor is a 'bare possibility' of access sufficient . . .[; a] plaintiff must establish that defendant(s) had a 'reasonable possibility' to view plaintiff's work.'" *Id*. (quoting *Glanzmann*, 8 U.S.P.Q.2d at 1595).

Plaintiffs base their theory of access on the following facts: White delivered a demo CD that included "Party Ain't Crunk" to McKaie at Universal with McKaie's permission; someone in McKaie's office opened the package containing the CD; Frederick told White that the CD (or the package containing it) was on McKaie's desk and that he would listen to it; and Blige and Young have business relationships with Universal. In response, Defendants offered uncontroverted evidence that Blige, Young, and the other artists who created "Family Affair" did not have access to "Party Ain't Crunk." Frederick stated that she never listened to the CD or passed it on to any person, including McKaie, but simply returned it to White. McKaie stated that he never observed any materials submitted by White, did not listen to the demo CD, and did not

pass the demo CD on to any person involved with Blige's album. Furthermore, McKaie stated that he had not had any contact with any of the artists who created "Family Affair" prior to the release of *No More Drama*. Blige did not know the names "Andy McKaie" or "JoAnn Frederick." Her only connection to McKaie is that she has a recording contract with Universal. Young did not know McKaie or Frederick, and Young's only connection with McKaie is that Young's record label, "Aftermath," has a distribution joint venture with a Universal entity called "Interscope."

Plaintiffs' assertions of a connection between McKaie and Defendants are entirely unsupported by the record. Plaintiffs claim that McKaie is a "liason between the departments that release old and new material and he has to coordinate with the new release division on the creative end," but they cite no support for this in the record (Pls. Br. 25), nor does the record contain such support. Also without citation or support, Plaintiffs claim that McKaie "was in a position to provide suggestions or comments to Blige and Young." (*Id*.) Plaintiffs point out that one of the songs on the *No More Drama* album contains a sample of a television theme-song, and they claim that the sample would have been cleared through McKaie's department and that he therefore "knew about the 'No More Drama' project and was working on it." (Pls. Br. 25.) This apparently is mere speculation, as the evidence Plaintiffs cite does not support their claim that the sample originated from McKaie's department or, if it had, that he would have known about it. (JA 370.) Plaintiffs never deposed McKaie or Frederick and have adduced no evidence at all about McKaie's job description or responsibilities. They have presented no evidence of the nature of Blige's and Young's relationships with Universal that would permit a jury to conclude that they might have received a copy of Plaintiffs' song from McKaie or from anyone else. At the summary judgment phase, Plaintiffs must come forward with some evidence that would allow a jury to conclude that there was a reasonable possibility that the creators of "Family Affair" had access to Plaintiffs' song. Plaintiffs have not done so.

The legal authority on which Plaintiffs rely fails to support their claim of access. Plaintiffs cite *Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th

Cir. 1981), for the proposition that access may be established where the alleged infringer and infringee "were dealing" with a third-party intermediary who had possession of the work that was allegedly copied.  In *Kamar*, the defendant, a seller of stuffed animals, was found to have access to the "texture and design" of copyrighted stuffed animals sold by plaintiff, a competitor, where the defendant purchased its stuffed animals from the same foreign manufacturing companies that manufactured the plaintiff's stuffed animals. *Id*. at 1060, 1062.  While it is true that both Young and Blige dealt with Universal in certain respects, there is no evidence that either they or anyone else involved in the creation of "Family Affair" had any contact with McKaie or his division, even indirectly. In the other cases Plaintiffs cite, the alleged infringers had far more plausible opportunities to view or listen to the allegedly copied material.  *See Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 354 (4th Cir. 2000) (finding sufficient evidence of access where intermediary *met with* creators of allegedly infringing logo to discuss the logo's design); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 943 (8th Cir. 1992) (finding sufficient evidence of access where intermediary record executive knew the alleged infringers well and had opportunity to provide input to them directly).

Plaintiffs argue that they have established access by virtue of the "corporate receipt" doctrine, under which possession of a work by one employee of a corporation implies possession by another corporate employee who allegedly infringed the work. *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A] (2008). This Court has not taken a published stance on the corporate receipt doctrine, but in one unpublished opinion, we affirmed a district court's refusal to infer access from bare corporate receipt.  *See Glanzmann v. King*, 887 F.2d 265 (6th Cir. 1989) (per curiam) (unpublished).  The district court in *Glanzmann* found that application of the corporate receipt doctrine would have resulted in the "implausible . . . quantum leap" that author Stephen King had access to a script submitted to a secretary at Columbia Pictures, even though the evidence suggested no reasonable possibility that the script had made its way to King.  *See Glanzmann*, 1988 U.S. Dist. LEXIS 15705, at *3-6.

Other circuits have rejected "bare corporate receipt" as sufficient proof of access, requiring plaintiffs to introduce some evidence that it was "reasonably possible that the paths of the infringer and the infringed work crossed." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (requiring a "close relationship" for the corporate receipt doctrine to apply); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 48 (2d Cir. 2003) ("[B]are corporate receipt . . . , without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access."); *Moore*, 972 F.2d at 942 (a "bare possibility" of access is not enough; rather, a plaintiff must show that the defendant had a "reasonable possibility" of viewing his work).

While we are cautious of making it overly difficult for plaintiffs to establish access where the chain of possession of a work within a corporation is difficult to prove, Plaintiffs in this case have set forth no evidence tending to show a reasonable possibility that their work made its way from McKaie to the creators of "Family Affair." There is no evidence that Blige, Young, or the other artists knew McKaie or worked with him, even indirectly. There is no evidence of the nature of Blige's and Young's relationships with Universal employees that would support an inference that McKaie transferred Plaintiffs' song to Blige or Young through other intermediaries at Universal. As far as the record shows, Blige and Young were affiliated with McKaie only through an attenuated corporate connection, and to find a reasonable possibility of access, a jury would be required to make an implausible leap, unsupported by evidence other than bare corporate receipt. Therefore, we affirm the district court's determination that Plaintiffs did not establish that Defendants had access to "Party Ain't Crunk."

The failure to offer proof of access cannot be excused in this case, because the two songs at issue are not so strikingly similar as to "preclude[] the possibility of independent creation." *See Murray Hill*, 361 F.3d at 317 (citation and quotation marks omitted). The district court found that the lyrics of the two songs are so dissimilar that no jury could reasonably conclude that they had been copied. Aside from the lyrics, the melodies and beats of the two songs do bear a passing resemblance to each other, but the similarity is not so striking as to allow an inference that copying necessarily occurred.

**C.     Independent creation**

Even if Plaintiffs had established an inference of copying, Defendants have provided unrefuted evidence that they created "Family Affair" independently before Plaintiffs created "Party Ain't Crunk." "[A]n inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work." *Ellis*, 177 F.3d at 507; *see also Fogerty*, 379 F.3d at 352-53. Defendants have demonstrated through testimony and studio records that Young created the core of the music of "Family Affair" on September 13, 2000, and that he had brought the non-lyrical portion of the song nearly to its final state by January 10, 2001. Longmire did not create the beat track for "Party Ain't Crunk" until late December of 2000, and he did not create the melody for "Party Ain't Crunk" until March of 2001. This proof of prior, independent creation rebuts any alleged inference of copying of the non-lyrical portion of "Party Ain't Crunk." *See Fogerty*, 379 F.3d at 352.

Blige stated that she recorded the lyrics of "Family Affair" in late May or early June of 2001, which is after the alleged access occurred. Other than the bridge, which she wrote herself, Blige was unable to add any information about the creation of the lyrics, except to state that her brother and his team of writers had been responsible for them and that, to her knowledge, they were original. Unlike the specific testimony from Young about the creation of the music for "Family Affair," the record does not contain testimony from Blige's brother or his team members detailing the creation of the lyrics. Therefore, Defendants have proved independent creation only of the music, and not the lyrics, of "Family Affair." However, because Plaintiffs could not establish access, and because the lyrics of the two songs are not so "striking[ly]" similar as to give rise to an inference of copying, *see Murray Hill*, 361 F.3d at 317, the grant of summary judgment as to the lyrics was also proper.

**D.     Attorneys' fees**

Defendants Blige and Universal appeal the denial of their motion for attorneys' fees. Section 505 of the Copyright Act provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. We review the district court's denial of attorneys' fees for abuse of discretion. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807 (6th Cir. 2005). A district court abuses its discretion when it makes clearly erroneous factual findings, improperly applies the law, or uses an erroneous legal standard. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

"The discretion to grant attorney fees in copyright infringement cases is to be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 893 (6th Cir. 2004). The nonexclusive factors considered in exercising this discretion are: "frivolousness, motivation, objective unreasonableness (factual and legal), and the need to advance considerations of compensation and deterrence." *Dimension Films*, 410 F.3d at 807 (citation omitted). Plaintiffs produced evidence of the following: a validly copyrighted song, permission from an executive at Universal to submit a demo CD that included that song, assurance from a secretary that the executive would listen to the demo CD, and the return of the demo CD in a manner showing that someone had opened the package in which it was submitted. Defendants' evidence countering Plaintiffs' theory of access and showing independent creation was brought forth during discovery and was not available to Plaintiffs when they filed their suit. Furthermore, Plaintiffs offered expert testimony that the songs were similar, and although the testimony was excluded, its existence weighed against deeming the suit frivolous. Accordingly, Plaintiffs' case was not frivolous or "objectively unreasonable." Nor, as the case progressed, did Plaintiffs conduct themselves in a manner that would justify us in finding that the district court's decision not to award fees was an abuse of discretion. *Cf. Diamond Time*, 371 F.3d at 896 (upholding award based on district court's conclusion that "litigation was undertaken and prosecuted in a fashion that would multiply the fees and encourage

nuisance settlement"). On the issue of deterrence, Defendants provide no reason to question the conclusions of both the district and magistrate judges that awarding attorneys' fees in this case could deter copyright holders from bringing valid enforcement actions. Therefore, we conclude that the district court's denial of attorneys' fees was not an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of Defendants' motion for summary judgment and **AFFIRM** the denial of attorneys' fees.