NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 14a0722n.06

No. 13-5796

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

JAMES MARTINEZ,                                          )
                                                        )
      Plaintiff - Appellant,                  )
v.                                                      )
                                                        )
SAMUEL TIM MCGRAW; JAMES STROUD; BYRON                  )
GALLIMORE; CRAIG WISEMAN; MIKE REID;                    )
ALAMO MUSIC CORP.; DADDY RABBIT MUSIC;                  )
BRIO BLUES MUSIC; CURB RECORDS, INC.,                   )
RONDOR MUSIC INTERNATIONAL, INC.,                       )
                                                        )
      Defendants - Appellees.                 )

```
                    FILED
                 Sep 15, 2014
           DEBORAH S. HUNT, Clerk
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE: **BOGGS, BATCHELDER, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** In this copyright-infringement action, Plaintiff James Martinez alleges that Defendants infringed his musical composition *Anytime, Anywhere Amanda* with the musical composition *Everywhere*. The district court granted Defendants summary judgment and we AFFIRM.

### I.

Martinez, a recording artist and producer of musical recordings, wrote *Anytime, Anywhere Amanda* (*Anytime*) around July or August 1996 and registered the copyright, together with two other songs, in December 1996. He filed the instant action in 2005 against Samuel Tim McGraw, the country-music recording artist who recorded and released *Everywhere* in 1997,

producers James Stroud and Byron Gallimore, songwriters Craig Wiseman and Mike Reid, and the entities that registered the copyright of *Everywhere* in March 1997.

The district court dismissed Martinez's action for failure to state a claim, Martinez appealed, and a panel of this court reversed the dismissal of the copyright infringement claims. No. 10-5594, order entered 8/23/11. The case proceeded on remand, and Defendants moved for summary judgment and to exclude the reports and testimony of Martinez's proffered expert. Martinez opposed the motions and requested three additional depositions under Fed. R. Civ. P. 56(d).

The district court denied Martinez's request for additional depositions and granted Defendants' motion to exclude Martinez's expert's reports and testimony. Subsequently, the court granted Defendants summary judgment, concluding that Martinez presented only speculation and conjecture to support his theories of access. The district court denied Martinez's motion for reconsideration.

**II.**

We review the district court's grant of summary judgment de novo; viewing the facts and inferences therefrom in a light most favorable to Martinez. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007). To succeed in a copyright infringement action, Martinez must establish 1) that he owns the copyrighted creation, and 2) that the defendant copied original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Jones v. Blige*, 558 F.3d 485, 490-91 (6th Cir. 2009). Only the second element, copying, is at issue here.

**A. ACCESS**

Martinez argues that the district court did not apply the correct legal standard in determining that he failed to establish access. He asserts that he is not required to show that the purported infringer actually had access to the copyrighted material, but rather, need only show an opportunity for access. Martinez correctly states the law; however, the district court required no more than the opportunity for access.

Where, as here, "there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). "Access is essentially 'hearing or having a reasonable opportunity to hear the plaintiff['s] work and thus having the opportunity to copy.'" *Ellis*, 177 F.3d at 506; *see also* 3 William F. Patry on Copyright § 9:23 ("the unlikelihood that copyright owners will catch many defendants in flagrante delicto has led to a relaxed definition of access as merely a reasonable opportunity for the work to have been available to defendant, the theory being that a reasonable person doing reasonable things would have been exposed to plaintiff's work.").

Martinez wrote *Anytime* for Amanda Little, the daughter of his friend Susan Tomac. After Tomac offered to "plug" the song during a trip to Nashville in the fall of 1996, Martinez mailed her a single demonstration cassette (demo tape) of three songs, one being *Anytime*. The demo tape was labeled with Martinez's name and phone number. Martinez acknowledged never

giving a written copy of *Anytime*'s lyrics to anyone before *Everywhere* was released in 1997.[1]

There is no dispute that *Anytime* was never published or distributed, never received radio play, is not available on iTunes, has not been performed by third parties, and that Martinez performed the song only in South Texas. Defendants' only possible access would have been through the demo tape Martinez gave to Tomac.

While Tomac was in Nashville in September or October 1996 she gave photographer David Bartley the demo tape at his photo studio in Franklin, Tennessee. Tomac considered Bartley "connected to the music industry" because "[h]e had branched out and was doing cassette covers and album covers for Nashville singers." PID 4900, 4902-03; 2044.

Defendants Wiseman and Reid, professional songwriters based in Nashville, attested that they co-wrote the music and lyrics of *Everywhere* around November 1996. Wiseman and Reid recorded a demo of *Everywhere*, which Defendant Almo Music, a publishing company that employed Reid and Weisman, pitched to non-party Missi Gallimore, a song selector for Defendant McGraw.

The copyright of *Everywhere* was registered on March 28, 1997, and lists Wiseman and Reid as the "words and music" authors. In June 1997, Defendant McGraw, then a country-music recording artist of some fame, released the album *Everywhere*, the title cut of which would climb to the top of the country music Billboard chart. Martinez alleges that retail sales of *Everywhere* exceeded 1,000,000 units.

Martinez testified that he heard *Everywhere* on the radio "probably the year it was released," i.e., 1997, but that was not what prompted him to bring this action. PID 3326. Rather, in 1997 or 1998, Martinez heard a different song, sung by Terri Clark, which had the same title

---

[1] Only after *Everywhere*'s release in 1997 did Martinez distribute copies of *Anytime* to persons other than Tomac. PID 3296, 3045-46, 3295 ("Later on in years, people would ask me for the song.")

as one of the three songs he copyrighted in December 1996, *Easy on the Eyes, Hard on the Heart*. Upset, Martinez called and asked Tomac what his song title was doing on the radio and to whom she had given his demo tape. Tomac responded that she gave the demo tape to someone in Nashville she thought was "connected." Years later, in 2005, while "plugging" his Copyrighted Collection in Corpus Christi with a disc jockey, the disc jockey told Martinez that Tim McGraw had already released the songs in the Collection. Martinez contends that at that point he realized that *Anytime* "had also been stolen . . . by McGraw or the other Defendants." Suppl. Interrogatory Responses, PID 3683.

All of Martinez's theories of access begin with third-party Susan Tomac, undisputedly the only person to whom he gave a taped recording of *Anytime* before *Everywhere* was released in 1997. Tomac testified that she gave the sole tape Martinez sent her to photographer David Bartley when she visited Nashville in the fall of 1996. Bartley was not deposed before he passed away in 2012; Martinez relies on the testimony of Bartley's ex-wife, Jenny Alvis,[2] that Bartley could or would have passed the demo tape to Karen Phillips, the then-owner of a pageant gown shop in Nashville, or to country music singer Lee Greenwood. Alvis testified that Bartley "wanted to be a big wheel" and would have jumped on an opportunity to become more involved in the country music industry. Alvis also testified that Lee Greenwood, with whom she and Bartley were acquainted through photography and the pageant industry, "could possibly have been a contact for David [Bartley] to pass along the cassette," and that Phillips, who was a friend of Lee Greenwood's wife, Kim, "could possibly also have been involved" in passing the demo cassette to Lee Greenwood. PID 4919; 5235.

---

[2] Bartley and Alvis separated in May 1996; their divorce was final in 1998. PID 4921.

On deposition, Tomac admitted having no knowledge that Bartley passed Plaintiff's demo tape to anyone or that anyone expressed interest in the demo tape. Alvis similarly testified that she never saw Bartley pass a cassette tape to anyone; no one ever told her that Bartley passed on the demo tape; she never heard Bartley mention a cassette; and she was "guessing" that Bartley could have passed the cassette to someone he knew in the music industry. As for Phillips, she denied ever having received a tape from either Tomac or Bartley.

Thus, Martinez's insistence that both Bartley and Phillips gave a copy of the demo tape to Lee Greenwood or to Greenwood's personal attorney, Ralph Gordon, is devoid of record support.

Martinez also failed to present evidence that Wiseman or Reid, the co-writers of *Everywhere*, had access or a reasonable possibility of access to *Anytime* through third-party intermediaries. Wiseman testified that he had never met Lee or Kim Greenwood and did not know Susan Tomac, Karen Phillips, David Bartley or his wife, Jennie. Reid similarly testified that he had never met David Bartley, Susan Tomac or Karen Phillips.

Greenwood and Reid testified that they met when Greenwood's producer and Barbara Mandrell's producer asked Reid to come to the studio while they were recording a duet album. Reid played a song on the piano titled "To Me" for Greenwood, which Greenwood later recorded. Greenwood testified that he never spoke to Reid again and Reid testified that he had not seen Greenwood since 1984. Greenwood testified that Bartley and his wife Jennie were acquaintances of his wife, Kim Greenwood, and he did not know either of them. Greenwood testified that he met Terri Clark only once, during an event at a hotel, and never saw her again.

Co-producer of *Everywhere* Byron Gallimore testified that he does not know Jennie Bartley, that he met Terri Clark for the first time around 2004, and that he only met Lee

Greenwood in the last five years. Gallimore testified that he and his wife Missi accept demo tapes but only from major publishing companies. Co-producer James Stroud testified that he knows Ralph Gordon but has never worked with him and did not know that Gordon is Greenwood's personal attorney. Stroud met Kim Greenwood around 2009 at a concert. Stroud testified that he does not know Jennie Bartley or Karen Phillips.

Missi Gallimore testified that she had nothing to do with the writing of *Everywhere* or the creative process behind it and does not remember what song pluggers worked on that album. She does remember that the song *Everywhere* was pitched to her through a song plugger at Almo Irving and that it was a Wiseman and Reid song. She testified that she has known Wiseman since the early 1990s and has known of Mike Reid since the early 1990s but does not think she ever met him. Missi Gallimore testified that she knows Kim Greenwood because they both have children at the same school. She testified that she knows Terri Clark because Byron Gallimore produced one of her records approximately several years after co-producing *Everywhere*.

Although Martinez maintains that *Everywhere* and Terri Clark's *You're Easy on the Eyes* were recorded "at the same relative time" at Sound Stage Studios, from all indications, the latter was recorded after Reid and Wiseman recorded a demo of *Everywhere* in November 1996, and both testified they had nothing to do with Clark's recording. Clark, Tom Shapiro, and Chris Waters co-wrote *You're Easy on the Eyes*, Clark released it in 1998 on Mercury Records, and Columbia House distributed it.

Martinez's theories of access through third-party intermediaries fall short. The district court properly determined that Martinez presented only "attenuated chains of hypothetical transmittals" in support of his claim that Defendants heard or had a reasonable opportunity to hear *Anytime*. *See* Patry on Copyright § 9:29. The chain of access vanishes after Tomac gave

the lone demo tape to Bartley in the fall of 1996, and the hypothetical transmittals fail to support a reasonable inference that any Defendant or associate of any Defendant received a copy of *Anytime*, much less that Wiseman or Reid, the alleged infringers, heard or had a reasonable opportunity to hear *Anytime* and copied it before they co-wrote *Everywhere* in November 1996.

The district court did not apply an improper standard in determining that Martinez failed to present sufficient evidence of access to survive summary judgment. As this court observed in *Blige,* "[a]ccess may not be inferred through mere speculation or conjecture." 558 F.3d at 493; *see also Ellis*, 177 F.3d at 506. A plaintiff cannot rely on unsupported inferences to prove access. *See e.g., Raum v. Norwood*, 93 F. App'x 693, 696-97 (6th Cir. 2004); *Ellis*, 177 F.3d at 506.

### III.

Martinez also argues that the district court relied on declaration evidence submitted by Defendants McGraw, Almo Music, and Curb Records to support its grant of summary judgment without allowing him to cross-examine, i.e., depose, them.

### A.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). We review for abuse of discretion the denial of a Rule 56(d) request for additional discovery. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) ("The Sixth Circuit generally applies the abuse of discretion standard to the district court's decision to deny discovery whether such request was made on a motion or a Rule 56(f) [now Rule 56(d)] affidavit. *See Plott* [*v. Gen. Motors Corp.*,] 71 F.3d [1190,] 1196-97

[(6th Cir. 1995].")  The test to determine whether discovery on a particular matter is permissible is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.  *See e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 982 (6th Cir. 2003) ("Rule 26 provides that discovery is permissible where it 'appears reasonably calculated to lead to the discovery of admissible evidence.'"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The scope of examination permitted under Rule 26(b) is broader than that permitted at trial.  The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.")

**B.**

Martinez does not address the district court's basis for denying the additional depositions--that the requested depositions were not reasonably calculated to lead to discovery of admissible evidence on the issues of access and similarity.  Assuming the issue is not waived, *see e.g., Ott v. Fed. Home Loan Mortg. Corp.*, 535 F. App'x 488, 489 (6th Cir. 2013), we observe that the only aspect of Martinez's Rule 56(d) request that could relate to Defendants' access to *Anytime*--Martinez's request that Almo Music provide the name of the person who worked with Missi Gallimore--could have been sought by interrogatory rather than by deposing a corporate representative of Almo.

Because Martinez did not show that the three additional depositions were reasonably calculated to lead to discovery of admissible evidence, the court did not abuse its discretion by denying his Rule 56(d) request.  *See Goodyear Tire & Rubber Co.*, 332 F.3d at 982.

**IV.**

Martinez also argues that the district court erred by failing to compare the two works to gauge whether they are substantially similar.  In response, Defendants maintain that where a

plaintiff fails to establish *any inference of* access, the court need not address substantial similarity, the second prima facie element of a copyright infringement claim.

Substantial similarity is determined in two steps: "[T]he first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the second involves determining whether the allegedly infringing work is substantially similar to protectible elements of the artist's work." *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003) (internal quotations and citations omitted); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010) (quoting *Kohus*, 328 F.3d at 853).

Martinez presented no evidence that any protectible musical element of *Anytime* is substantially similar to *Everywhere*. Martinez does not challenge the district court's ruling that his proffered expert, Sanders, was unqualified. Rather, Martinez argues that the district court should have considered Sanders's *factual* testimony regarding substantial similarity. This argument fails because Sanders relied wholly on non-party Rod Moore for his (Sanders's) opinion regarding whether the two works were musically substantially similar, in contravention of Fed. R. Evid. 701(a)'s requirement that lay witness testimony be rationally based on the witness's perception.

The only evidence addressing whether *Everywhere* is substantially similar to protectible elements of *Anywhere* was the testimony of Defendants' expert, musicologist Anthony Ricigliano, who opined that the two works "do not share any significant similarity in lyric content, melodic content (pitch-series, rhythm or rhythmic patterns, melodic development or structure), or harmonic content, that rises to the level of substantial similarity of protectable expression." PID 5532-36.

Assuming that substantial similarity would be sufficient, there was no error because no evidence was presented that protectible elements of the two works are substantially similar.

For these reasons, we AFFIRM the grant of summary judgment to Defendants.