BOGGS, Circuit Judge.
This case deals with contract interpretation; specifically, whether a “drag-along” provision in a licensing contract would take effect automatically. The district court held that it did, as a matter of law. We hold that the contract provision was ambiguous on this point, and that the question of whether it would take effect automatically presents a genuine issue of material fact. We therefore reverse that part of the district court’s judgment.
I
American Greetings is the largest publicly traded greeting-card company in the world. MoonScoop is a French international entertainment and distribution company. The two parties entered into a sales contract under which MoonScoop was to purchase Strawberry Shortcake and The Care Bears, two of the most valuable properties of American Greetings. American Greetings was interested in selling, in part, to free itself from a costly licensing contract it had with The Cookie Jar Company, a Canadian entertainment and animation company. That licensing deal is the starting point of the current appeal.
In October 2001, American Greetings entered into a long-term contract with DIC Entertainment Corporation. The contract allowed DIC to act as a licensing agent for American Greetings’s intellectual property rights in Strawberry Shortcake.[1] DIC could market and distribute certain video, TV, and products involving Straw *97 berry Shortcake, making it the primary domestic and partial international licensing agent for most non-toy marketing segments.
In 2008, DIC transferred its rights in Strawberry Shortcake to Cookie Jar. American Greetings sued both DIC and Cookie Jar regarding this deal. The parties settled. As part of the settlement, American Greetings and Cookie Jar entered . into three interrelated binding agreements, including, most importantly for this case, the 2008 Letter Agreement.
Under the 2008 Letter Agreement, Cookie Jar agreed, subject to certain conditions, to buy the Strawberry Shortcake and Care Bear properties owned by American Greetings and its affiliates for $195 million. Cookie Jar was required to secure necessary financing and close the transaction by September 30, 2008. If it failed to do so, American Greetings could shop one hundred percent of the properties, including all of the rights held by Cookie Jar, to other purchasers for six months. If American Greetings received an offer during that period, Cookie Jar was to have a five-day right to match it. If Cookie Jar failed to close on the match, then American Greetings could sell to the third party.
The 2008 Letter Agreement contained a “drag-along” provision. The drag-along provision stated:
[I]f, during the Shop Period, A[merican] Greetings] receives a Binding Term Sheet from a non-affiliate and subsequently closes such transaction within 75 days following receipt of the Binding Term Sheet, A[merican] Greetings] shall have the option to cause C[ookie] J[ar] to consummate the transactions set forth in the Binding Term Sheet during such 75-day period (a “drag along”), which right shall run with the properties .... In the case of any drag along ... C[ookie] J[ar] shall provide reasonable cooperation .... If AG ... exercises any of such drag along ... rights, C[ookie] J[ar] shall receive 20% ... of the gross proceeds.... All payments to C[ookie] J[ar] must be in cash and paid in full at the closing....
(emphasis added). The drag-along thus allowed American Greetings to “cause” Cookie Jar to participate in the sale to a third party. The drag-along stated that Cookie Jar “shall provide reasonable cooperation” in the process. American Greetings had the option to invoke the drag-along for seventy-five days following Cookie Jar’s receipt of a Binding Term Sheet, representing a sales contract between American Greetings and a buyer. If the drag-along was exercised, Cookie Jar was to receive 20% of the gross proceeds of the sale of the properties, and this amount had to be in cash and paid in full at the closing.
Cookie Jar failed to meet its obligation to purchase Strawberry Shortcake and the Care Bears for $195 million by September 30, 2008. After Cookie Jar’s default, American Greetings began soliciting bids from other potential buyers as was allowed by the six-month shopping period in the 2008 Letter Agreement.
On March 24, 2009, American Greetings and MoonScoop signed a $95-million contract (the “Binding Term Sheet”) for sale of “the Properties,” which consisted not only of Strawberry Shortcake and the Care Bears, but also “all rights in those properties held by Cookie Jar Entertainment, Inc. and all its affiliates.” The properties were to be transferred to Moon-Scoop “at the closing, free and clear of all liens, claims, and security interests, except for the interests held by Hasbro and by existing licensees in the normal course.” The Binding Term Sheet stated that the closing would occur within 75 days of its signing.
*98 On March 30, Cookie Jar stated its intent to match the MoonScoop sale price. On April 30, though, it notified American Greetings that it could not secure financing. In the April 30th letter, Cookie Jar also stated that American Greetings had given MoonScoop unequal terms (namely a longer timeframe to obtain financing) and had thus dishonored Cookie Jar’s matching right. Cookie Jar repudiated any obligation it had to cooperate with the sale, stating that “we believe that AG has no legal right to ‘drag along[1] Cookie Jar’s rights ... given the circumstances and the terms of the offer made by MoonScoop” and that American Greetings was “attempting to enforce the ‘drag along’ where it has no right to do so.”
In response, American Greetings sued Cookie Jar, seeking declaratory relief and specific performance relating to Cookie Jar’s obligation to relinquish its rights in Strawberry Shortcake pursuant to the drag-along provision. In a separate suit filed the same day, Cookie Jar sued American Greetings and MoonScoop, seeking a declaration that American Greetings could not drag Cookie Jar along.
On May 27, representatives of Moon-Scoop and its financing partners, Classic Media and GTCR Golder Rauner LLC, met at the headquarters of American Greetings to discuss the deal. MoonScoop alleged that the meeting was largely to get assurances that American Greetings would deliver Cookie Jar, and that American Greetings provided these assurances.
On June 1, financing partner GTCR sent a request to American Greetings, asking that the June 7 closing date be tolled until the resolution of the Cookie Jar claims. American Greetings refused, but suggested closing on or before June 7 into escrow. MoonScoop and GTCR declined.
On June 2, the president of American Greetings sent an email to Cookie Jar’s CEO, stating that in light of Cookie Jar’s unambiguous statements that it would not comply with the drag-along, American Greetings “concluded that judicial intervention was necessary to force a sale of those rights.”
On June 5, 2009, American Greetings’s general counsel sent a letter to Cookie Jar, warning that its refusal to comply with the drag-along would “defeat American Greetings’s ability to close on the transaction with MoonScoop,” indicated that it was invoking the drag-along rights, and asked Cookie Jar to indicate in writing that day whether it intended to comply.
Finally, on June 7, 2009, seventy-five days after Cookie Jar had received the Binding Term Sheet and therefore the last day of the 2008 Letter Agreement option period to invoke the drag-along rights, American Greetings, MoonScoop, and GTCR held a conference call. Litigation between American Greetings and Cookie Jar was ongoing. During the call, Moon-Scoop’s representatives stated that its financing was conditioned on its entering a long-form agreement that would extinguish Cookie Jar’s rights. No agreement was reached.
At 11:48 pm, in a last-minute effort to save the deal, MoonScoop faxed and emailed a letter to American Greetings stating that MoonScoop and its financial backers were willing to close the deal on the terms of the original Binding Term Sheet. However, American Greetings did not respond to this offer.
On June 9, the president of American Greetings sent an email stating that the deal with MoonScoop fell through “because we couldn’t agree on how to handle Cookie Jar’s unwillingness to be dragged along.... Obviously the other side was not willing to pay us without knowing for sure we could deliver and we needed to make *99 sure that if we signed something we wouldn’t be sued by the other party if we couldn’t deliver because of Cookie Jar.... It is ironic ... that we finally had a buyer who had the cash and was willing to pay us and close if not for Cookie Jar.”
In August 2009, MoonScoop sued American Greetings in diversity in the United States District Court for the Northern District of Ohio, claiming that American Greetings breached their contract and sought specific performance or damages. American Greetings responded, while also filing a third-party complaint against Cookie Jar, claiming that Cookie Jar’s refusal to cooperate with the drag-along provision caused any liability that American Greetings owed to MoonScoop.[2]
American Greetings and MoonScoop filed cross-motions for summary judgment, in which each party accused the other of failing to deliver Cookie Jar’s rights. American Greetings argued that Moon-Scoop was at fault because, by not paying the $95 million on June 7, MoonScoop allowed the drag-along right to expire. American Greetings argued that the drag-along provision was the only means by which the parties had envisioned delivering Cookie Jar’s rights, that the drag-along was self-executing, and thus that the provision would have delivered all of Cookie Jar’s rights so that the Properties were delivered “free and clear,” and that time was of the essence in the contract. Moon-Scoop argued that American Greetings breached the contract before June 7, when it became clear that it could not deliver Cookie Jar’s rights as it had promised to do in the Binding Term Sheet. Moon-Scoop argued that because American Greetings was in material breach on June 7, MoonScoop had the option to refuse to pay and to sue for damages or, as agreed in the Binding Term Sheet, for specific performance. Moonscoop contended that the drag-along was not self-executing but required Cookie Jar’s cooperation, and that even if the drag-along had been successfully used it still would not have guaranteed delivery of all of Cookie Jar’s rights.
The district court granted American Greetings’s motion for summary judgment. It denied MoonScoop’s motion for summary judgment, but granted part of it, agreeing with MoonScoop that American Greetings must indemnify it against the third-party claim made against MoonScoop by Cookie Jar.
The court held that express language in the Binding Term Sheet regarding the drag-along provision (that American Greetings could “cause” Cookie Jar to relinquish its rights)and the surrounding circumstances (the importance the parties placed on closing within seventy-five days) indicated that time was of the essence in this contract. MoonScoop did not tender the purchase price by June 7, 2009; instead, it informed American Greetings that it was ready and willing to pay for the properties. MoonScoop’s nonpayment caused the drag-along provision to expire. The district court held that the drag-along, had MoonScoop activated it by tendering payment, would have automatically terminated Cookie Jar’s rights. Therefore, MoonScoop was at fault for the fact that Cookie Jar’s rights were not delivered. Therefore, the district court denied in part MoonScoop’s motion for summary judgment, which would have entitled it to specific performance or damages. It granted *100 American Greetings’s motion for summary-judgment against MoonScoop, allowing American Greetings to extinguish all its obligations under the Binding Term Sheet.
Finally, the district court granted in part MoonScoop’s motion for summary judgment against American Greetings by declaring that American Greetings must “defend and indemnify” MoonScoop for the claims filed against it by Cookie Jar.
We reverse the district court’s grant of summary judgment for American Greetings. We affirm the district court’s partial denial of summary judgment for Moon-Scoop and the district court’s grant partial grant of summary judgment for Moon-Scoop, regarding MoonScoop’s claim that American Greetings must indemnify it against the third-party claim made against it by Cookie Jar.
II
We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party’s favor. Jones v. Blige, 558 F.3d 485, 490 (6th Cir.2009). Summary judgment is proper if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.CivP. 56(a); Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute is only “genuine” where it is “based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.” Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir.2009).
III
A
The key inquiry in this case is whether the Binding Term Sheet made time of the essence, and this hinges on whether the drag-along provision was self-executing. This is an issue of contract interpretation.
Generally the interpretation of a contract is, under Ohio law, a matter of law for the court. St. Marys v. Auglaize Cty. Bd. of Comm’rs, 115 Ohio St.3d 387, 875 N.E.2d 561, 568 (2007). The court’s interpretation is reviewed de novo. Ibid. But when a contract is susceptible to two or more reasonable interpretations, the resolution of the ambiguity is an issue for the trier of fact. Cent. Ohio Joint Vocational Sch. Bd. of Educ. v. Peterson Construction Co., 129 Ohio App.3d 58, 716 N.E.2d 1210, 1213 (1998) (citing Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc., 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984)). In this case, the court seemed to ignore the ambiguity in the Binding Term Sheet. The court held that Moon-Scoop’s timely payment would have resulted in the automatic drag-along of Cookie Jar’s rights into the transaction. However, the court’s reasoning is not clear.
The plain language of the 2008 Letter Agreement does not indicate that the parties necessarily intended the drag-along provision to be automatic. The Binding Term Sheet did not state expressly that the drag-along was “automatic” or “self-executing.” On the one hand, it did state that American Greetings could “cause” Cookie Jar to relinquish rights, and the clause itself is called a “drag-along,” indicating that Cookie Jar could be forced to cooperate, perhaps with automatic effect. On the other, it stated that Cookie Jar would “cooperate” and “participate,” which indicate that Cookie Jar’s cooperation might be essential to the clause’s operation. Further, the effect of the clause was in dispute amongst the parties, and the clause was the subject of separate litigation between Cookie Jar and American *101 Greetings. When the language of a contract is unclear or circumstances invest the language with special meaning, extrinsic evidence may be used to clarify the parties’ intentions. Thompson v. Cmty. Ins. Co., 213 F.R.D. 284, 297-98 (S.D.Ohio 2002). Not only was the meaning unclear here, but the Binding Term Sheet expressly repudiated a merger clause. The district court should have looked to the parties’ actions to give effect to the clause, which it either did not do or did not explain in any detail. Under Ohio law, the district court should have “given great weight to the practical construction provided by the parties themselves to the contract.” Lippencott v. Lippencott, No. 93 CA 16, 1993 WL 476230 at *5 (Ohio Ct. App. Nov. 17, 1993).
The parties’ conduct in the record, viewed in the light most favorable to MoonScoop, as is required at the summary-judgment stage, suggests that there was a genuine issue as to whether the drag-along was, or even could be, self-executing. After all, when A and B agree that C will give up certain rights, with no clear authority for anyone to force C to do so, some ambiguity seems possible. Moon-scoop has argued since its original complaint that the drag-along was not automatic. It argues that due to the ongoing litigation between American Greetings and Cookie Jar on this point, the drag-along could not have taken effect without a court decision. More specifically, MoonScoop notes that the litigation between Cookie Jar and American Greetings centered on whether Cookie Jar’s matching right had been properly observed. A determination that Cookie Jar’s matching right had been violated might have invalidated American Greetings’s right to sell the properties at all, at least without breaching its 2008 Letter Agreement with Cookie Jar.[3] Moon-Scoop provided letters in which Cookie Jar also argued that American Greetings had no legal right to drag it along. Moon-Scoop provided emails and letters from American Greetings stating that Cookie Jar made it impossible for American Greetings to deliver the properties by refusing to comply with the drag-along, implying that American Greetings did not view the drag-along as self-executing. Though on appeal American Greetings disputes MoonScoop’s argument that the drag-along was not self-executing, its past actions show that it, too, acted as though the drag-along was not self-executing.
American Greetings filed suit against Cookie Jar in May 2009 in order to obtain a declaratory judgement that Cookie Jar had to cooperate with the drag-along. On appeal, American Greetings argues that the only reason for this action was to reassure MoonScoop. Nevertheless, American Greetings’s actions certainly could lead a reasonable person to think that it was unsure of its legal ability to drag Cookie Jar along. In American Greetings’s response to MoonScoop’s original complaint in this action, it stated that “Cookie Jar prevented the MoonScoop transaction from closing.” American Greetings also admitted in response to interrogatories that on May 29 MoonScoop stood ready, willing, and able to close, but that Cookie Jar prevented the closing. It is difficult to see why American Greetings would blame Cookie Jar for preventing the *102 closing if the drag-along could be effected without Cookie Jar’s consent or cooperation. As a final example, American Greetings filed a third-party complaint against Cookie Jar in the current litigation, claiming that any liability that American Greetings had to MoonScoop was due to Cookie Jar’s refusal to relinquish its licensing rights in the properties; in other words, its refusal to be dragged along. Evidence taken from American Greetings’s own submissions indicates a genuine question as to whether the drag-along was self-executing.
The issue of whether the drag-along clause self-executing is capable of affecting the outcome of the suit, and is therefore material. Lapeer Cnty., Mich. v. Montgomery Cnty., Oh., 108 F.3d 74, 78 (6th Cir.1997). If the drag-along, as Moon-Scoop argues, was not self-executing, or was invalid due to American Greeting’s failure to honor Cookie Jar’s matching right, then American Greetings did not deliver the properties “free of liens and claims” to MoonScoop on June 7. American Greetings did not do so because on June 7 Cookie Jar had no intention of relinquishing its rights and was litigating to prove that it did not have to comply with the drag-along. By not delivering the properties as promised, American Greetings may have been in material breach of the Binding Term Sheet.
B
American Greetings makes a number of other arguments to tempt this court to affirm the district court’s grant of summary judgment despite the ambiguity of the drag-along clause, but these arguments are unavailing. American Greetings argues, for example, that if Cookie Jar’s cooperation with the drag-along was required, then American Greetings’s failure to secure that consent excuses American Greetings’s performance as a failure of an express condition precedent. The relevant clause in the Binding Term Sheet states:
The obligations of [the parties] are conditioned solely upon satisfaction or waiver of the following conditions ... (ii) receipt of all material necessary third party consents and approvals....
At least as a matter of law at the summary-judgment stage of the litigation, drawing all inferences in MoonScoop’s favor, we cannot hold that American Greetings could use its own failure to obtain Cookie Jar’s consent to excuse its own obligations under the Binding Term Sheet. The more natural reading of the clause is that if one party failed to obtain receipt of material necessary third-party consents, then the other party would not have to perform. For example, if American Greetings failed to get Cookie Jar’s consent to transfer its rights in the properties then MoonScoop would not have to perform.
American Greetings also argues that MoonScoop failed to complete the other express conditions precedent to closing and that this failure to perform excused American Greetings’s performance. The conditions to which American Greetings refers are “(i) regulatory approval ... and (iii) within 30 days of the Binding Term Sheet, receipt of financing ... on terms and conditions that are commercially reasonable in the circumstances and reasonably acceptable to M[oonScoop].” Financing was obtained by MoonScoop, but regulatory approval had not been obtained as of June 7. However, whether or not MoonScoop breached by not meeting these conditions depends on whether American Greetings was already in material breach for failing to deliver Cookie Jar. If American Greetings was already in breach, then MoonScoop was justified in halting performance and suing for damages, excusing MoonScoop from having to *103 meet the final conditions. Brakefire, Inc. v. Overbeck, 144 Ohio Misc.2d 35, 878 N.E.2d 84, 101-02 (Ohio Com.Pl.2007). Under those circumstances, MoonScoop was not required to perform the expensive futility of pursuing regulatory approval. Therefore, this issue cannot be decided until the district court has decided the issue of American Greetings’s breach on remand.
Finally, American Greetings argues that MoonScoop was literally not able to perform on June 7, because MoonScoop agreed to pay too late in the day for American Greetings to receive payment and send it to Cookie Jar in order to trigger the drag-along. This failure, argues American Greetings, excuses American Greetings from performance. This argument again ignores the fact that if American Greetings was in material breach of contract on June 7, then Moon-Scoop would be entitled to halt performance and sue for damages. Brakefire, 878 N.E.2d at 101-02.
The existence of a genuine issue of material fact, as exists in this case, means that summary judgment for American Greetings should have been denied.[4]
C
MoonScoop moved for summary judgment not only on American Greetings’s alleged breach of contract, but also on American Greetings’s contractual obligation to indemnify MoonScoop for claims brought against it by Cookie Jar. The district court was correct to grant MoonScoop summary judgment on this issue. The district court held that the plain language of the Binding Term Sheet signified that MoonScoop should be so indemnified. The Binding Term Sheet provides:
If any of MoonScoop, its subsidiaries and/or its affiliates, ... is named as a party in any claim or legal action arising from the purchase of the Properties and the claimant or claimants in such action assert that AG did not have the legal right to sell and transfer the Properties to MoonScoop, as provided herein or such third party claims or actions otherwise arise as a result of the submission or execution of this Binding Term Sheet, then AG shall indemnify and defend the MoonScoop parties against any costs, expenses and liabilities resulting from such claim or action; provided, that AG shall be entitled to prosecute such defense and assume control of all settlement negotiations; ... MoonScoop shall be permitted to participate in the defense with its own counsel at its own cost. If, in MoonScoop’s reasonable, good faith belief, AG fails to provide an adequate defense to any claim or action, MoonScoop may take any actions necessary to adequately defend itself at AG’s expense. The indemnification provisions set forth herein shall survive indefinitely-
(emphasis added). American Greetings argues on appeal that it should not have to indemnify MoonScoop against Cookie Jar’s claims because in this suit MoonScoop is not “named as a party,” but rather was the plaintiff. However, MoonScoop was the plaintiff only as to the claims against American Greetings, for which MoonScoop does not seek indemnification. Cookie Jar was brought into the litigation by American Greetings as a third-party defendant, with American Greetings as the third-party plaintiff. Cookie Jar then initiated its own claims against MoonScoop, and on those claims MoonScoop is indeed “named as a party,” which brings the claims under *104 the indemnification agreement. Even though MoonScoop is the plaintiff in the main action and not a named party, it is the defendant in the “cross-claim” made by Cookie Jar and is therefore a named party for the purposes of these claims. Therefore, the plain language of the indemnification provision requires that American Greetings indemnify MoonScoop against Cookie Jar’s claim.
American Greetings further argues that MoonScoop’s “failure to properly demand defense” and its decision to retain its own counsel in the district court is fatal to its claim for indemnification. However, the district court points to two letters wherein, in response to MoonScoop inquiring about indemnification for the Cookie Jar cross-claims, American Greetings flatly denied that any indemnity obligation exists. The record reflects that American Greetings denied its obligation to MoonScoop, not that MoonScoop hired counsel in contravention of its duty to allow American Greetings to defend it. It is true Moon-Scoop did not request that American Greetings indemnify it until its Second Amended Complaint was filed. However, Cookie Jar did not file its cross-claim against MoonScoop until the day before MoonScoop filed its first amended complaint, so MoonScoop could not have requested indemnification any earlier. The district court did not err in holding that MoonScoop did not delay unduly in filing its second amended complaint requesting indemnification.
IV
For the foregoing reasons, we REVERSE the district court’s grant of summary judgment for defendant-appellee American Greetings. We AFFIRM the denial of partial summary judgment for plaintiff-appellant MoonScoop and the partial grant of summary judgment for plaintiff-appellant MoonScoop regarding indemnification. We REMAND the case for further consideration in light of the court’s opinion.

. Strawberry Shortcake was created in the 1970's by Those Characters From Cleveland, a wholly owned subsidiary of American Greetings. American Greetings owns the intellectual property in Strawberry Shortcake.

. In response, Cookie Jar filed counterclaims against American Greetings and claims against MoonScoop, claiming American Greetings and MoonScoop conspired to deprive Cookie Jar of its licensing rights and its option to buy the properties. These claims are not at issue in this appeal.

. The district court also noted that Cookie Jar’s matching rights may have been violated by the deal with MoonScoop, but erroneously placed the impact of that violation on Moon-Scoop, and not on American Greetings's ability to fully deliver Cookie Jar. If the matching right had been violated, then the drag-along could not be invoked — the honoring of the matching right was a necessary prerequisite to the successful implementation of the drag-along.

. Similarly, because questions of material fact persist however, the court’s partial denial of summary judgment for MoonScoop on the same issues was proper.

. The Wiedemann rule has been consistently followed in Ohio since 1908. See, e.g., Tighe v. Wilson, 68 Ohio App.2d 113, 427 N.E.2d 531, 533 (1980); Bahner's Auto Parts v. Bahner, 1998 WL 470494, at *3" (Ohio Ct.App. July 23, 1998) (unpublished).